McCulloch, Adm'rx., v. Judd, Sons & Co.

McCULLOCH, ADM'RX. *vs.* JUDD, SONS & CO.

1. Where an account is placed, together with a number of others, in the hands of an attorney for collection, proof that the debtor came several times to his office, and examined the bundle of accounts in which it was filed, and made no objection to either the correctness or justice of any of them, is sufficient to charge him with an acknowledgment of the justness of the demand.

2. A creditor may sue one or all of the members of a firm, on a debt contracted in the firm name, and may declare on the demand as ·the individual liability of the partner or partners sued.

3. Under the statute of this State (Clay's Digest 324, § 67) a creditor may proceed to judgment against the personal representative of a deceased partner, and have execution against him for his recovery, *provided,* he makes the affidavit required by the statute; or he may proceed to judgment, without making the affidavit, but cannot have execution until he has sued the surviving partners to insolvency.

4. In a suit upon an account for goods sold and delivered, where the defendant pleads the statute of limitations of three years, and the plaintiff replies specially "that the account was between merchant and merchant," proof that the plaintiff and defendant were both merchants at the time the goods were sold is not, of itself, sufficient to support the replication.

5. An account containing several items of debit against the defendant for goods bought, and a single item of credit for cash paid, is not an account arising out of "the trade of merchandize between merchant and merchant," within the proviso of the statute of limitations, (Clay's Digest 328, § 88.)

ERROR to the City Court of Mobile.

Tried before the Hon. Alex. McKinstry.

The defendants in error declared against the plaintiff in error as administratrix of Charles McCulloch, deceased, in *indebitatus assumpsit* for goods sold, and on account stated between the parties. The defendant below pleaded *non assumpsit,* payment, statute of limitations of three years, statute of non-claim, and the insolvency of the estate of her intestate. The defendants in error replied generally, and took issue on all the pleas, except that of the statute of limitations of three years, to which they replied that the parties were merchants, and the account was between merchant and merchant. These pleadings were all taken in short by consent.

On the trial, the plaintiffs below read the deposition of one Knight, who deposed, " that he knew Mr. Coffin, one of the firm of Coffin & McCulloch, of Mobile, and he knew of goods

sold and delivered to them by the plaintiffs at different times since 1845; that at the time the sales were made the witness was the general clerk and salesman of the plaintiffs, and had a general knowledge of their business; that the book-keeper of the plaintiffs at the time said sales were made was one Wm. Coffe; that Coffe died about three years before the witnesses were examined; that during the time said Coffe was book-keeper, witness had access to the books, and had a general knowledge of all the business transactions of the plaintiffs; that the account attached to his deposition is a true abstract from the books of the plaintiffs; that the same was collated and compared by witness."

To this deposition is appended an account of Coffin & McCulloch, with Samuel Judd, Sons & Co., showing a balance in favor of the latter of $1538 65.

John A. Hitchcock, a witness for plaintiffs, testified that McCulloch, in his lifetime and before suit brought, called more than once at his office, for the purpose of seeing what he could do in trying to effect a settlement of sundry large claims then in the hands of Lockwood & Hitchcock, against the firm of Coffin & McCulloch, of which he was a partner, among which was the claim sued on; that all the claims were in one bundle, and McCulloch frequently had them in his hands for examination; witness had no remembrance of having seen him examine this account in particular; that the object of the visits of McCulloch to the office of Hitchcock & Lockwood, was to make arrangement for the settlement and liquidation of these claims; that at none of these interviews did he (McCulloch) ever make any objection to the account sued on.

The plaintiffs then, by consent of defendant's counsel, read in evidence to the jury a statement of the Judge of the Probate Court of Mobile county, showing that letters of administration were granted to Mary E. McCulloch on the estate of Charles McCulloch, deceased, on the 16th November, 1848, and on the 7th December, 1850, the plaintiffs filed an account against said estate for $1120 11 in his office.

The plaintiffs here closed their case; and the defendant offered no testimony, but asked the court to charge the jury, that upon this evidence the plaintiffs were not entitled to re-

cover; and also to charge the jury, that proof of a sale of goods to Coffin & McCulloch would not support the allegation in the declaration of a sale of goods to McCulloch alone. Both these charges the court refused to give, and the defendant excepted. The court then charged the jury, that the debts of a partnership were the several debts of each partner individually, and if the jury were satisfied by the proof that there had been a sale of goods by the plaintiffs to the firm of Coffin & McCulloch, as set forth in the account which had been shown to them, then the statement in the declaration of a sale to McCulloch was sustained by proof; to which charge the defendant also accepted.

The refusal to charge as asked, and the charge given, together with the judgment of the court, are here assigned for error.

O. S. JEWETT, for plaintiff in error.

J. T. TAYLOR, *contra*.

LIGON, J.—This case must be considered as though it stood on demurrer to evidence, for the first charge requested of the court below by the counsel for the defendant, has been treated by this court as equivalent to such demurrer.

To authorize a recovery by the plaintiffs, on the several issues in the court below, they must show the justice of their demand; that it is not obnoxious to the statute of limitations of three years, and not barred by the statute of non-claim. And to make good their special replication, it must appear that their account with the defendant originated in the trade of merchandize, and is an account between merchant and merchant, within the meaning of the statute of limitations of this State. If these are made out by proof, or by legitimate inferences deduced from testimony, then the judgment in their favor in the court below must be here affirmed.

1. I will first examine the case under the issue made on the plea of *nonassumpsit*. On a review of the testimony, so far as it relates to the sale of the goods to Coffin & McCulloch, the presentation of the account to McCulloch in his lifetime, and his silent acquiescence in its correctness, after he had it in his possession, under such circumstances as create a fair

presumption that he had noted its contents and examined its items, we think the testimony of Knight and Hitchcock sufficiently establishes. The latter of these witnesses deposes, that this account, with others, was sent to his law firm, that they might settle and liquidate it; that McCulloch came several times and examined the bundle in which this one was filed, and never made objection to either the correctness or justice of any of them. This, we think, is quite sufficient to charge Coffin & McCulloch with an acknowledgment of the justice of the claim.

But it was objected in the court below that proof of an existing demand against the firm of Coffin & McCulloch, accompanied with an express or implied assumpsit on their part to pay it, would not authorize a recovery on a declaration which averred it to be the debt of McCulloch alone, and his undertaking to pay it as such; and to this effect the counsel for the defendant requested the court to charge the jury. The instructions were properly refused; for the question of the right of a plaintiff to sue one or all of the members of a firm, for a debt contracted in the firm name, and to declare upon the demand as the individual liability of the member or members so sued, is no longer an open one in this State. The act of 1818, Clay's Dig. 323, § 63, clearly confers that right, and the decisions in the cases of Von Pheel & McGill v. Connally & Anderson, 9 Port. 452, and Trann v. Gorman et al., ib. 456, show that it may be asserted in the manner it is here sought to be enforced. In those cases, however, the actions were brought against the partner himself, and not, as here, against his personal representative; but this, we apprehend, does not interfere with the manner of declaring, or the nature of the evidence necessary to support the declaration.

The right to sue the personal representative of a deceased partner separately, is also given by statute, and, although the act which confers it, imposes some modifications and restrictions upon the manner of commencing the suit or of enforcing the judgment, yet none of these extend either to the pleadings or proof. The act is in these words, "Where any person or persons shall have a cause of action against any copartnership, any of the members of which may have died, such per-

son or persons shall be permitted to sue and recover of the personal representatives of the deceased partner or partners, without first having prosecuted the surviving partner to in-solvency: *Provided*, The plaintiff shall, before instituting such suit, make affidavit, in writing, before the clerk of the proper court, or the court itself, to be filed with the papers, that the survivor is insolvent, or unable to pay the amount of the debt, or is beyond the jurisdiction of the court: *Provided further*, That when any such representative is sued separately, which may be done without such affidavit, no execution shall issue against such representative, until an execution is *bona fide* run, and returned *nulla bona* as to the survivors." Clay's Dig. 324, § 67. The creditor by this act may proceed against the personal representative to judgment, and have execution against him for his recovery, without prosecuting the surviv-ing partners to insolvency, if he makes the affidavit required by the first proviso in the statute; or he may, as in the case under consideration, sue and recover his judgment, without making such affidavit, but cannot be allowed to execute that judgment until he has sued the surviving partner or partners to insolvency. Our conclusion is, that there was neither a deficiency of proof, nor an error in the charge of the court, so far as the plea of *nonassumpsit* is concerned.

2. To the plea of the statute of limitations of three years, it appears by the record, the plaintiffs replied specially, that "the account was between merchant and merchant." This replication is neither very full nor formal; but great strictness in pleading is not required where the liberal practice of "pleading in short," as it is termed, is indulged at *nisi prius*. We will, therefore, treat this replication as though it con-tained all that is required to bring the plaintiffs within the proviso of our statute of limitations on open accounts. They might have replied generally to this plea, and relied upon the proof to show that the account on which they sue was an account stated, and thus, successfully, have taken the account out of the statute pleaded; but they have not thought proper to do so, and we are hence forbidden to examine the question in that aspect.

The statute on which both the plea and the replication are founded is as follows: "No action shall be brought to

recover money due by open account, after the expiration of three years from the accruing of the cause of action : *Provided*, That nothing in this act shall apply to the trade of merchandize between merchant and merchant, their factors and agents." Clay's Dig. 328 § 88. Does the proof in this case bring the plaintiffs within the exception contained in the proviso? We are persuaded it does not. It is true, they show themselves to be merchants, and also that the defendant's intestate was such, at the time the goods were bought; yet we apprehend that this proof alone is not sufficient for that purpose.

The English statute of 20th James I, with the exception of the word "servants," which is found in that act, is identical with our own. Under that statute, it has been held, that the word "accounts" was not intended to apply to settled or stated accounts between the parties; and in a case where the plaintiff proceeded in his declaration on an *insimul computasset*, and the plea was the statute of limitations, to which the defendant replied, that the money in the account mentioned became due and payable on trade between the plaintiff and defendant as merchants, and wholly concerned merchandize, a demurrer to the replication was unanimously sustained, and the replication held bad for the reason before stated. Webber v. Tivil, 2 Saunders, 121. In the case of Cotes v. Harris, referred to in Buller's Nisi Prius, 150, Dennison, Justice, is reported to have said and held, "that the clause in the statute of limitations in relation to merchant's accounts, extended only to cases where there are mutual accounts, and reciprocal demands between two persons." This, it is true, is but the language of one judge, but Mr. Justice Buller gives it his sanction, and Lord Kenyon quotes it with approbation in Cranch v. Kirkman, Peake's Nisi Prius, 121.

The distinction between an account current, which is held to be within the statute, and an account stated, which is not, has been often taken, and is now admitted in England. 1 Vesey, 456 ; 4 Mod. 105; 2 Vesey, 400 ; 1 Mod. 270.

The American courts have generally come to the same conclusion, where the statutes of their several States were substantially the statute of James I. See 6 Peters, 151 ; 5 Cranch, 15 ; 2 John. 200 ; 2 How. Miss. 786 ; 6 ib. 328 ; 2 Humph. 142 ; 5 John. Chy. Rep. 522.

In the first and last of the cases here cited, the English and American authorities are elaborately examined, in one, by Chief Justice Marshall, and in the other, by Chancellor Kent, and they arrive at the conclusion which we have attained. In the last case, Chancellor Kent uses the following clear and emphatic language: "To bring a case within the exception of the statute, there must be mutual accounts, and reciprocal demands between two persons;" and this, we think, is the only fair and reasonable conclusion to be deduced from all the authorities.

How stands the case here? The plaintiffs present an account against Coffin & McCulloch, with several items of debit, and a single credit for so much cash paid. Aside from the fact, that the testimony of Hitchcock shows this to be a stated, and not an open account between the parties, the account itself does not exhibit such items of debit and credit as will stamp it with the character of a mutual account between merchants, showing reciprocal demands arising out of the trade of merchandize. Failing to do this, the replication of the plaintiffs is not sustained by the proof.

3. On the plea of the statute of non-claim, we do not think the plaintiffs made out their case in the court below. That statute is in these words: "All claims against the estates of deceased persons shall be presented to the executor or administrator within eighteen months after the same shall have accrued, or within eighteen months after the passage of this act, or within eighteen months after letters of administration shall have been granted to the said executor or administrator, and not after; and all claims not presented within the time aforesaid, shall be forever barred from a recovery: *Provided*, That the provisions of this section shall not extend to persons under age, *femes covert*, persons insane or *non compos mentis*, to debts contracted out of this State, nor to claims of heirs or legatees claiming as such." Clay's Dig. 195 § 17.

By the act of the 5th February, 1850, the mode of presenting claims against the estates of deceased persons was altered, and the exception in favor of those creditors whose debts were contracted out of this State was abolished. The second section of that act provides, that filing the claim in the office of the Probate Court, out of which the letters of

administration issued, shall be a sufficient presentation to the administrator; and the fourth section repeals the exception in favor of those whose claims arise out of contracts made beyond the limits of the State, and places all claims on an equality, as to *the time* of their presentation. Sess. Acts 1850, p. 68.

. The only proof of presentation of the claim of the defendants in error in this case is, the certificate of the Judge of the Probate Court of Mobile county, in which it is certified that this claim was deposited in his office on the 7th of December, 1850, and that letters of administration were issued to the plaintiff in error on the 16th November, 1848. This is not a presentation within eighteen months after administration granted, as required by the statute of non-claim, and consequently the claim is barred.

It results from what has been said, that the judgment must be reversed, and the cause remanded.